The next case is 06-1206, Exigent Tech v. Atrana Solutions. Mr. Wagner, whenever you're ready. Thank you. May it please the Court, Matthew Wagner from Column IP on behalf of the Plaintiff Appellant, Exigent Technologies. We are here today, Your Honors, to correct a gross injustice that has occurred in this case and to reverse the District Court's denial of the Plaintiff's motion to disqualify Defendant's Counsel Michael Buechenhorner and his firm, Holland and Knight. This motion for disqualification is based on violations of Florida ethical rules, including a breach of the attorney-client privilege, conflict of interest rules, and as a result of their disqualification, the District Court erred in refusing to vacate the judgment that was entered against the Plaintiff in this case. By way of brief factual background, the facts are pretty well detailed in the parties' briefs, but helpful to discussion here of the law and application, I'd like to just highlight a few things. In early to mid-2003, Mr. Buechenhorner, who was working through Blackstone's outside general counsel law firm, De La Pena and Associates, advised Blackstone, then owner of the 917 application, which ultimately... Well, let me cut you off because I think we're quite familiar with the facts here that are laid out in the briefs. Let me ask you, do you dispute that there can be a waiver under certain circumstances? Absolutely. There is actual knowledge combined with an intention to use the conflict later on in litigation as a sword rather than the shield that the... Okay, so let me parse that. So actual knowledge. Actual knowledge of what? Actual knowledge of the conflict. The Florida ethical rules place affirmatively the duty on the lawyer to advise the client, to disclose the conflict, and in fact, it is even the disclosure of a potential conflict that is required under the Florida ethical rules. In this case, Mr. Buechenhorner, immediately upon being approached by Atrana, the defendant in this case, when he was at Holland and Knight, he immediately recognized the conflict. Now, even if we consider it to be a potential conflict, which of course we deny, we believe it's an actual conflict, he brought that to Mr. Stone, who was the partner who was in charge of the case and also on the litigation. And they concluded... I want to focus on your side of the equation, because that's where the waiver... I mean, the question is whether or not you all waived it and goes to your knowledge. So you're saying, because there's a discussion in the briefs and in the court's opinion, actual knowledge, constructive knowledge. But, I mean, the judge, it seems like there are findings that your client at least had a piece of paper at the time, and so he had knowledge of something, correct? At which time are you referring? 2003 or 2005? Well, I'd rather ask the questions than answer them, so why don't you tell me when you think your client had actual knowledge that this attorney was involved in the case. I apologize, Your Honor, for seeking to clarify that. The actual knowledge accrued in early 2005. The motion to disqualify was filed approximately six or eight days after that e-mail was discovered. Immediately upon discovery of the actual... But why didn't he... He received the e-mail, even though he had belated rediscovery of the e-mail. He received the e-mail at some time earlier, correct? He, as a member of Blackstone, as the owner of Blackstone, was copied on certain e-mails. The work that was performed was with Janet Sancho, then Director of Marketing and Sales for Blackstone. Contrary to the misstatements in Apelli's brief, Blackstone was not a one-man show. In fact, there are various inconsistencies in their brief. They call it a one-man show, and then at another time they talk about Carl Fisher, who was the president. They talk about Janet Sancho, who was Director of Marketing. It was a large organization. Mr. Arias, the sole owner of Exigen, which acquired substantially all the assets of Blackstone, as found by the district court, was copied on certain e-mails that Mr. Buechenhorner had sent. Those e-mails were in servers. They were archived. They were gone. When he conducted his search of his files for discovery, they were not found. It was only after the servers crashed in 2005 that all of this was restored to their mailboxes, and he happened upon this e-mail, which brought back a rush of knowledge. He then went to Ms. Sancho, who was familiar with the situation, and that's how this all arose. Now, it bears noting that defendant tries to shift the burden here upon the client to disclose or to bring the conflict to light, but the rules require the lawyer to be that person. Now, Mr. Buechenhorner had actual knowledge of this situation when he was engaged by a trial. Leaving that aside, the question here is whether or not there was any obligation by your client to come forward. Right, and he did come forward when he had actual knowledge of the information, which did not occur until 2005. But he was an officer of the corporation. He was an officer of Exigen, that's correct. All the corporations, as I understand it. Yes. Blackstone, Exigen. That is correct. And others. That is correct. Now, is an officer of the corporation who receives a document, does that give actual knowledge of the corporation through the officers? I don't believe so. It is a situation where the client is the one that the ethical rules and the laws protect, not the lawyer. The lawyer should have brought this to light, to attention, at the moment that this became an issue. Had that occurred, then all of this situation could have been readily avoided. Mr. Arias would have been placed on notice and he could have made a determination at that time. Now, Holland and Knight's own treatise is very instructive on this issue. What if Exigen is the actual knowledge through the officer at the time that they received the email? I'm sorry, I'm not sure I understand your question. Well, the company receives the email. He receives it as an officer of the corporation. Is that knowledge that's contained in that email transferred to the corporation as actual knowledge of the corporation? Even if that was the case, a year or more later when the lawyer appears in the action, there may be an instance where that information has been archived away, that that information is no longer on the top of that corporation's mind or the officer's in that corporation. Well, there is a case under the Eleventh Circuit called Framont Tillett Limited v. American Title Insurance Company, and the citation is 691 Fed Second 991, in which the Eleventh Circuit states that under Florida law, the individuals involved on behalf of the seller to the corporation did not remember the papers received at the purchase or did not bother to look at them. Nevertheless, the entity, the corporation, can be held to know what is or should be in its own files concerning that property. This is not constructive knowledge, as argued in the brief for the seller, but actual knowledge. So if the corporation has actual knowledge when they receive the email that was sent to the officer, actual knowledge in this particular case came up in 2001, when the email was received. Your Honor, even if that is the case, and even assuming the standard supplied by the defendant in this case is correct, which we also dispute, the standard that must be met includes an intention to relinquish or waive that right. That is not the case here. That did not happen in this case. That actual knowledge must also be coupled and combined with an intention to waive it. Why does there have to be an intention to waive it when you sit on your rights for three years and bring it up after you lose the litigation? Well, with all due respect, Exigent did not sit on its rights for three years. It was, we contend, unaware of its rights. But the corporate entity has actual knowledge. This is what I'm trying to get to. If, in fact, the corporation has actual knowledge, is that a waiver when you raise it four years later? But even assuming that that actual knowledge existed, and even assuming that the standard as articulated by the defendant is correct, and now I'm referring to their brief at page 19, that waiver requires the existence at the time of waiver, the right, actual or constructive knowledge thereof, and three, an intention to relinquish such right, privilege, advantage, or benefit. There was never an intention to relinquish that right or benefit. And in response to Judge Prost, that exception to the waiver, even based on actual or constructive knowledge, must include some element of mens rea. There must be, coupled with that actual knowledge, an intention on the client's part to use that as a sword rather than a shield, and to literally lie in wait until you lose the case, only to use it to your advantage later on in the case. There is no evidence that that occurred. In fact, the district court's opinion here rests solely on constructive knowledge. So we have a couple things going on here. First of all, even assuming that there was actual knowledge, even assuming that we had attorney-client relationships and such, there was no intention to relinquish that right. It was never disclosed to the client. There was no seat. The lawyer never sought a waiver or consent. And in fact, it was never intentionally used as a sword rather than a shield. And therefore, the district court's opinion is clearly erroneous. Now, I would like to comment before my time is up here on the standard. Well, you're out of your rebuttal time, but we'll add some time to it. All right. I appreciate that. The standard of review here is in dispute. One of the cases cited by defendants is the Solomon case, 916, Southern and 2nd, 943. The review of the district court's decision on the disqualification issue is a de novo review, and that appears at 944 of the Solomon case. Now, because the evidentiary basis of the review here is based solely on the declarations and affidavits, there was no evidentiary hearing taken in this case, this court reviews the district court's opinion on the disqualification issue de novo. There is no factual dispute in the record that Mr. Arias and or Exigent ever used the conflict as a sword rather than a shield, nor is there any evidence that he or the company intentionally relinquished that right. The second step in this- But isn't this really a Rule 60b-6 motion? Well, that's the second step, which is a 60b motion to vacate the judgment, which, Your Honors, we posit, once you derive a decision under the disqualification issue and it is found, in fact, that the law firm and the lawyer should be disqualified based upon a breach of the attorney-client privilege, which also is irrefutably presumed once you find the conflict, then it would be gross injustice not to vacate the summary judgment that occurred in this case. And so, Your Honors, the plaintiff puts those standards of review together in that fashion. We believe that's the correct construction here. You say this is a gross injustice, but even assuming you're correct on the waiver issue, what difference does that make in the outcome of the case that would warrant a 60b action? Well, the attorney-client privilege is the most sacrosanct privilege in American jurisprudence. Now, we understand that. The plaintiff has- But in this particular case, you're not talking about confidential information that would have made a significant difference, are we? I believe, yes, we are, Your Honors. Mr. Buechenhorner prepared a 13-page single-space memorandum marked Privileged Confidential Attorney Work Product in 2003, where he analyzed perceived weaknesses in the application, analyzed the potential interference with another patent application. He analyzed potential infringement by a direct infringer as opposed to a contributory infringer, and then he used that very analysis, that same analysis that he rendered for Mr. Arias and Blackstone against Exigent in the litigation against them. And it was based on those very arguments that the Court found in their favor. Exigent is entitled to have their dispute heard and decided without conflict, and that is the gross injustice. How do you ever unring that bell? I mean, the fact, if you've got a do-over on this case, how do you unring the bell? I mean, everything is a matter of record. You're not going to preclude them from using that theory based on what's happened. So what does it matter? You have a do-over, and it comes out the same way, and the issues raised are the same. What kind of showing have you made that it affected the outcome here or that that would be changed if the attorney were disqualified? Your Honor, at the time this occurred, at the time the summary judgment was rendered in the case, I had been, my firm had been substituted in as counsel about two weeks earlier. The summary judgment in this case was entered as defendant concedes in their brief essentially by default. Now, following that order on summary judgment, I, in another case, participated in many rounds of Markman briefing and many Markman hearings at which I can represent to the Court that the infringement claim in this case against the trona has merit. We have an expert who we have retained to analyze the situation. That's testimony, which we really don't need to have before us. I'm sorry. I'm merely trying to respond to explain why I don't believe that the Court would be correct in deciding that it's okay. The conflict existed. There was an attorney-client relationship. There was a breach of privilege and ethical violations, but it wouldn't matter anyway, so we'll affirm this. I think that that is the essence of what would be a gross injustice. Mr. Wagner, you're well in your rebuttal time over it. We'll restore two minutes of rebuttal. Thank you, Your Honors. We'll add three minutes to the other side also, if you need it. Mr. Brannick. Good morning, Your Honors. May it please the Court, I'm Steve Brannick of the Law Firm of Holland, and I'm here representing the appellee at trona. The trial court's decision to deny the motion to vacate was not an abuse of discretion. It should be affirmed for at least three reasons. First, the trial judge was correct in determining that even if there was a conflict, that conflict was waived. Secondly, the appellant cannot meet the very high standards of 60B, because there is absolutely no evidence that the alleged conflict had any impact on the trial court's ruling, which was as a matter of law. But the district court didn't reach those other questions. You're absolutely right. What I want to focus on this morning is the waiver argument. And this is, of course, how the district court resolved the case. The alleged conflict was known from the beginning of the lawsuit in this case. They waited until they lost the lawsuit before they brought the conflict to the district court. Let me tell you what's bothering me a little bit here. And that is, and I don't want to make the other side's argument for them, but let's assume there was actual knowledge. He saw the e-mail, as Judge Gallarza suggested, anybody in the corporation, he had knowledge. It seems that he had knowledge that this person had sent an e-mail and was working for the company. It seems to me actual knowledge is a little different if you're talking about the actual knowledge that there was a conflict. For example, if hypothetically this person's name was Susan Smith or John Smith, so clearly everybody at the get-go knew somebody that named John Smith was intimately involved at some stage of this proceeding. But that doesn't mean that just because there's a John Smith is one of 400 lawyers on the other side, that one should, one has knowledge that somebody named John Smith once represented them, but not knowledge that there's a conflict. Do you understand what my concern is, that I think those questions of actual knowledge are on two different levels, and I'm concerned where you get, where you reach the second level here, even if he had actual knowledge of the e-mails? Of course, we're fortunate in this case because the lawyer's name was not John Smith. It was Michael Buechenhorner, which is a fairly unusual name. Clearly, he had actual knowledge that, assuming we believe his story, that a lawyer named Michael Buechenhorner was hired by him and was giving him advice. Then we also have undisputed evidence throughout the case that Michael Buechenhorner was involved in the litigation of the exigent case, and Mr. Arias was very intimately involved in the litigation of the exigent case. Clearly, he knew. Now, what did he say jogged his memory? He said his memory was jogged on March 5th of 2005, after he lost the case, when he, I'm sorry, May 5th of 2005, after he lost the case, when he sees the same e-mail, and he sees Michael Buechenhorner's name. Now, why would Michael Buechenhorner's name have any more impact on him at that point in time than it would have had at the beginning of the case? I think what the district court was saying here was that Mr. Arias' story, that his memory was magically restored to him after he lost the case, was simply not credible. He had the actual… But did the district court make any of those findings? What the district court… Well, essentially what the district court said was, look, Mr. Arias, you can't have it both ways. You can't say that Mr. Buechenhorner provided you this advice, was given all of these confidential documents, in fact, documents that you say you didn't even have a copy of, and then turn around and say that you forgot. I think implicit in that is a finding that Mr. Arias' story was not credible. I think that's what the district court was saying when the district court said at the very least you had constructive knowledge, Mr. Arias. But there was a finding of constructive knowledge, not actual knowledge. That's true, but in the context of the district court saying, look, Mr. Arias, you can't have it both ways. You can't say that there's this substantial conflict and then turn around and represent to the court that you forgot. But if there was such a direct identification of the attorney, then it's more than just constructive knowledge. It would be actual knowledge. It would absolutely be actual knowledge. But that was not the finding. It was constructive knowledge. That's what the court said, but again, in the context of saying, Mr. Arias, you can't have it both ways. Well, how can the corporation waive that right? Can it be waived implicitly, or does it have to actually say, Mr. Buechenhorner, you can now represent the other side? It can absolutely be waived implicitly. Look at the cases that we cited in our brief on page 18. The Transmark case, the Balda case, the Cox case out of the 11th Circuit, the Batchelor case, the Jackson case, the Bond case, the Lee cases. They're all cited in our brief on page 18, and they all are exactly the same factual circumstance here. They're a case where there was unquestionably a conflict. Of course, we deny that there's a conflict, but in those cases, there was unquestionably a conflict, and the conflict was not brought to the attention of the litigant. In those cases, the litigant had knowledge and sat on its rights, and in all of those cases, the courts hold that the fact that you sat on your rights throughout the course of the litigation is a waiver of your right to complain about the conflict. That's an implied waiver, not an actual waiver at that point, is it? I guess you could say that. I mean, courts generally don't put it in those terms. They say you knew about it, you didn't raise it, you waived it. You could call that, I guess, an implied waiver, but the factual circumstance is all the same. They say you have a duty, and the cases say this directly. The Cox case in the 11th Circuit says this directly. The Transmark case in the First District Court of Appeal in Florida says this directly. You must raise the conflict with reasonable promptness after you discover the conflict. If you don't, the conflict is waived. The cases are absolutely clear about that, and then generally they go on to make the second point, which is also a point that exists in this case, which is, and the reason we don't want parties to do that is because then you can use conflicts for tactical purposes. Well, let me ask you, are you suggesting that in every case, or at least we're talking about Florida here, that if a firm is going against another one, it's their obligation, and again, if we're imputing knowledge of one officer of the company or something in the company, that every corporation on an ongoing basis, every time the other side gets a new lawyer, they're supposed to do their own independent conflict checks, not with regard to anything about their representation, but they should check the list of every lawyer on the other side. They should check all of their documents to see if anybody in the company had ever had any dealings with that lawyer, and they should do that on an ongoing basis because new lawyers come in and out and so forth. Those cases say that once you have actual knowledge, then you have to bring the case. Now, this is not a case where we're talking about corporate underlings somewhere having this knowledge. This is actual knowledge by the president or the principal of the corporation, Mr. Arias, who was also the principal that was involved in the litigation. So we don't have to make this connection. We don't have to impose a duty to dig down deep into the record and find out the conflict. We don't have that tougher case here. We've got a very easy case when the actual knowledge went directly to the key principal in the corporation, the key principal who was involved in litigating the corporation, sitting on the other, litigating the case, sitting on the other side from the table for Mr. Buechenholmer throughout the course of the litigation. This is not a tough case on wavering. Now, the second element that the courts all look at is we don't want these sorts of conflict waiver arguments to be made tactically. Counsel for the appellant says, well, that's not the case here. There's no evidence that we were lying in wait. I would submit to the court that this is the epitome of the case when someone is lying in wait. They didn't bring the conflict to the attention of the court until after they lost the case. But the thing that disturbs me about that is it seems to me that's in the control of the other side. The other side can easily avoid tactical use by his opponent, by the lawyer disclosing. I mean, the lawyer in the first instance, you don't dispute. It's the lawyer's obligation to disclose it, correct? Absolutely, if you believe there's a conflict, yes. Well, if he does, he or she does what they're supposed to do under the ethical rules, then the other side can't, no matter how much it wants to have some tactical advantage by sitting around and waiting, you control that. Well, absolutely agreed, Your Honor. But all the cases we've cited in our brief, the cases that I've recited to Your Honor, those are all cases when the lawyer didn't do that. Those are cases where the lawyer didn't disclose the conflict, and still the court found waiver because the parties on the other side knew about the conflict and didn't bring it to the attention of the court. And in all of those cases, the court said that that's a waiver, and you can't bring the conflict back to the fact. So you are agreeing with my first hypothetical, which is it's not that they knew that the lawyer was there, it's that they made the second leap, which is knowing that the lawyer was the actual individual and therefore had a conflict. Oh, absolutely. To me, there's no doubt in looking at this record when you look at the e-mails and then you look at the conduct of the parties throughout the course of this litigation that they in fact had actual knowledge of their conflict argument and chose not to raise it until they needed to raise it when they lost the case on summary judgment. This is a perfect example of an improper tactical use of a conflict. Perhaps most interesting, take a look at Mr. Arias' second declaration, which is in the record at A331-38 when he describes how he discovered this e-mail. Now, keep in mind that this e-mail was sent to him back in 2003. Keep in mind that this e-mail should have been discovered during the course of the litigation because it was directly responsive to our discovery request, and that doesn't jog his memory. His memory suddenly is jogged after the case is over when he says his e-mail server crashed and he had to reconstruct his e-mail database. Yeah, but what disturbs me about that is we're not fact finders in the first instance, and can you point to me in anything in the district court's opinion that suggests that she made these observations and drew these conclusions based on credibility or otherwise? Oh, I think what she's saying, Mr. Arias, you can't have it both ways. I mean, I think that is the message that the court is sending there. But I think that's a question. Well, I think there's a little difference between messages the court is sending and findings of credibility, right? Well, absolutely true, but I think when you look at the entire opinion, which is short, I mean, I think it's clear that the district court didn't believe the story. And when you look at the record, it's absolutely clear why. And the court made the two observations. One, you can't have it both ways, which I've said a couple of times. And secondly, she also pointed out that this was information that was relevant to the discovery request. It should have been produced in discovery anyway. So even if we believe you, Mr. Arias, that you somehow forgot back in 2004, you should have run across this e-mail during the course of the litigation, which you never bothered to produce. If you had even feebly attempted to respond to discovery, you would have run across this e-mail, and that would have jogged your memory at that point in time. Instead, you have this, and the district court didn't say this, but this is my argument. You look at his declaration. When you see how he alleges that he uncovered this on May 10th or May 5th after he loses the case, it's an absolutely incredible story. He says basically that he's in the process of sorting 50,000 e-mails, and suddenly, magically, this e-mail comes to light, and it jogs his memory. The story just does not hang together. I think the district court was absolutely correct in ruling that the motion should be denied. What was Ms. Sancho's? Was Ms. Sancho deposed during the discovery? I do not recall, Your Honor. There was no deposition of Ms. Sancho in the appendix. It's not part of the record. Do you know what position she occupied? Her title is in her declaration. I just don't recall off the top of my head. But if you look in her declaration, you'll see the position. Well, we have, but it really doesn't state whether she was an officer of the corporation or not. All right. But, of course, our argument is that the e-mails of March 6th and March 7th, 2003, were transmitted directly to Mr. Arias. One, he was CC'd, and the other, he was the direct recipient of that e-mail. The other point that I'd like to make, just very briefly, is that even if the court were to determine that there was a conflict, even if the court were to determine that it's not waived, this is a no-harm, no-foul situation. Under Rule 60B, it's a very extraordinary remedy requiring exceptional circumstances. And even today, at oral argument, counsel for appellant could make absolutely no connection between the alleged conflict and the granting of summary judgment in this case. Isn't that a question that should be answered by the district court in the first instance? But I think it's a question that this court can easily answer in the first instance because it's, just by looking at the record below, we see that summary judgment here was granted as a matter of law, not based on any confidential materials, based entirely on public record. All that this was was an examination of the patent, which is an obvious public record, against Atrana's product. Blackstone's original product wasn't even an issue in the case. So for those reasons, we think that there was absolutely no connection between the alleged conflict and the ultimate summary judgment. And so this is a situation where, and the cases are clear on this, the merits case, for example, that we cited in our brief, that it's not enough to show a conflict. You have to show directly how that conflict impacted on the ultimate result. That's the piece of the puzzle that's missing here. And for that reason, even if there were a conflict, which we do not believe there was, the district court did not abuse its discretion and its judgment should be affirmed. Are there any more questions? Thank you, Your Honor. Thank you, Mr. Briner. Mr. Wagner, you have two minutes. Thank you, Your Honor. Ms. Sancho's declarations appear at A266 and A173. She was the director of business development, and she was not an officer of the company at that time and not at this time either. All of the cases that Appelli says it cited in its brief we distinguish in ours. Those all deal with waivers of rights other than attorney-client privilege and conflicts. Attorney-client privilege and conflicts are dealt with specially because it is such a high privilege. In fact, Holland and Knight's treatise on this subject states that, and I quote, the client may waive the conflicts of Florida Rule 4-1.7 by consenting after consultation with the lawyer. The consultation must include explanations of the implications of the common representation and the advantages and risks involved. Thus, a client's awareness of a conflict and subsequent inaction do not constitute consent. And that's Florida Insurance Guarantee Association v. Cary, Canada, 749 F. Sup. 255, Southern District of Florida, 1990. In their notes, they cite other cases, one of which was a conflict that a client knew about for more than a year and yet was not barred from asserting it. I agree with Judge Proust that these factual determinations are for the trial court to make in the first instance. That answers your question, Judge Lynn, which is what effect would this have on the judgment and the summary judgment order that was entered and the merits of the case? There should be an opportunity to litigate those merits. We must be mindful that the district court here found constructive knowledge. That was the finding, not actual. Yet the court also found that a waiver ensued. That is clearly erroneous. It's contrary to law. Now, can we make a finding of actual knowledge from the documents? Well, the Solomon case states that you may take this on a de novo review, and that means you get to review the documents and come to your own conclusions. So we can make a finding of constructive knowledge. I believe you can. And get the documents supported. That's correct. I would point to a few documents in the record in this school. You're well into your additional time, Mr. Wagner. Maybe I could just cite them for your honors. A214, this is the deposition of Mr. Arias, where Mr. Buechenhorner is sitting in the room with him. Don't give us an explanation. Just cite the documents. A214, it is at page 20 of the transcript, lines 5 through 10. It should be noted that these documents they accuse us of failing to produce in the litigation were not produced by them either. We gave them original materials. They never gave them back. That appears, and that's a matter of record in the case, in the transcript of proceedings before Judge Martinez. Thank you, Mr. Wagner. Thank you very much. Thank you very much. The case is submitted. All rise. The honorable court is adjourned from day ahead.